LUGER FURNITURE COMPANY v. WARREN GILBERT and Others.[1]

June 8, 1897.

Nos. 10,572—(206).

### Appeal—Weight of Evidence.
*Held*, the decision is supported by the evidence.

Action by the Luger Furniture Company against Warren Gilbert, in which the Warren Manufacturing Company was summoned as garnishee. The Sawyer Grain Company interposed a claim to the fund attached. There was a finding for plaintiff, and from an order of the district court for Marshall county, Ives, J., denying a new trial, claimant appeals. Affirmed.

*Wilson & Van Derlip* and *S. Cooke*, for appellant.
*H. Steenerson*, for respondents.

CANTY, J. In March, 1893, the plaintiff recovered judgment against Gilbert, the defendant, for $380. On February 27, 1896, the garnishee summons herein was served on the garnishee, the Warren Manufacturing Company, and, on the disclosure, the Sawyer Grain Company appeared as claimant of the indebtedness due from the garnishee. The garnishee admitted the indebtedness, and paid the money into court. On a subsequent trial of the issues between the claimant and the plaintiff, before the court, without a jury, the court found for plaintiff, and from an order denying a new trial the claimant appeals.

[1] Reported in 71 N. W. 685.

Appellant contends that the decision is not supported by the evidence for two reasons, one of which is that it conclusively appears that Gilbert acted merely as its agent in buying the wheat, and that the wheat so bought belonged to it. It appears that in October, 1895, Gilbert was in possession of a grain warehouse in Warren, Minn., and the claimant was engaged at Minneapolis and Duluth in the business of selling grain on commission. About October 20th, one Tower, the agent of claimant, made some arrangement with Gilbert, whereby claimant agreed to furnish money to the Bank of Warren, to be paid out on wheat tickets issued by Gilbert for wheat purchased by him, and received at his warehouse. Under this arrangement, Gilbert purchased during the next few months about 65,000 bushels of wheat, and shipped all of it to Duluth and Minneapolis to claimant, except 2,800 bushels, which, on February 10, 1896, were sold to the garnishee, and for which it agreed to pay 48 cents per bushel. This contest is over the purchase money so agreed to be paid. The contract between Sawyer and claimant was an oral one, and there is a dispute as to what it was. On the trial, Tower testified:

"The agreement was that the Bank of Warren should draw on Sawyer Grain Company for funds for the purchase of wheat by Mr. Gilbert; that he was to issue the regular printed form of ticket in the purchase of the wheat, and these tickets were to be presented to the bank by the sellers of the wheat, and they were to be paid by the bank. The wheat in the elevator was to be insured by the Sawyer Grain Company at their expense. He agreed to pay 8 per cent. interest on the money used, and one cent per bushel commission to the Sawyer Grain Company. It was also agreed that the wheat should all be shipped to the Sawyer Grain Company, either at Minneapolis or Duluth. They were to advise him the best point to ship to. They were to handle the wheat, and the proceeds, over and above their charges for commission and interest and other necessary expenses of weighing, and so forth, were to go to Gilbert. * * * Gilbert was to receive all the profits of the sale of the wheat that he shipped, over and above these charges and the commission. He was to receive the benefit of any excess there might be on the sale of the wheat. * * * The agreement between myself and Gilbert as to whose name the money should be placed in was that it was the Sawyer Grain Company's name. * * * Myself and Gilbert went over to the bank, and instructed the bank just what the agreement between myself and Gilbert was. * * * They were to draw on

the Sawyer Grain Company for this money against which tickets were to be issued."

This is corroborated by the testimony of the banker. Gilbert testified on behalf of plaintiff as follows:

"The arrangement I made with Tower there was this: The Sawyer Grain Company were to loan me money with which to purchase wheat, as I needed it, and the money was to be placed in the Bank of Warren to my credit, and I was to pay them eight per cent. interest per annum for the use of it. In addition to that, I was to pay half a cent per bushel for all wheat I shipped to them; and, further, I was to pay them half a cent per bushel commission for all the wheat handled by them that was shipped to them. There was nothing special whether I should ship all the wheat to them or a part. They were to have half a cent per bushel for the use of the money in addition to the interest, and half a cent commission. * * * Tower told Lamberson (the banker) that the Sawyer Grain Company was to furnish me money from day to day as I needed it with which to purchase wheat, and it was to be placed to my credit, and I was to issue tickets against it there."

The money was kept in the bank in the name of "W. Gilbert, Agent." Gilbert received a block of blank wheat tickets from claimant, and up to about November 4th used these tickets, signing them "Sawyer Grain Co., Owner, by W. Gilbert." He issued tickets in this form for an aggregate amount of 3,000 bushels of wheat. Then he received a letter from claimant, objecting to the use of its name on the tickets. On November 4th he replied as follows:

"Your favor of 2d recd. I note what you say in regard to billing in your name. I did not know what to do in regard to name of shipper. Your putting up the money, I thought perhaps you might want it that way. It never occurred to me that it would injure your receiving business. I assure you it will not occur again."

On November 6th, claimant, in response, wrote as follows:

"We have your favor of the 4th, and note contents fully. You have evidently misunderstood what we said regarding the use of our name. We did not mean in the way of billing, but in the way of buying. All the tickets that have been sent to us so far have our name as the owners. What we want is to have you buy in your own name, and issue tickets accordingly."

As to those matters, Gilbert testified as follows:

"When I started in to buy wheat, I started in with these judgments standing against me, and I was afraid to buy in my own name, afraid of being tied up, and I used their name until they stopped me.    These judgments have been hanging over me ever since.    I could not do any other way.    They would not allow me to use their name.    That is why I did it.    I made the change from Sawyer Grain Company to W. Gilbert at their request.    That is why I started to buy in their name.    I did it without their authority."

There are many other facts and circumstances of minor importance bearing on the question, and we will not take the time to enumerate them.    We are of the opinion that the evidence warranted the finding of the court, which in effect is that Gilbert bought the wheat as his own, with money borrowed by him from claimant.

The other reason urged by appellant why the decision is not sustained by the evidence is that their agent, Tower, was present when the wheat was sold to the garnishee; and it is claimed that it was agreed between him and Gilbert and the garnishee that the price of the wheat so sold should be paid to Tower as claimant's agent.    If the evidence conclusively established this claim, appellant should prevail, but it does not.    Tower testified, in support of this claim, but he was contradicted by Gilbert and the president and the bookkeeper of the garnishee, who testified that, though Tower was present at the time of the sale, he took no part in the negotiations, and that no agreement was made that the price of the wheat should be paid to him, and none that it should be paid to the claimant.

This disposes of all the questions in the case having any merit, and the order appealed from is affirmed.